No. 26-3106

IN THE

# United States Court of Appeals
# for the Ninth Circuit

STATE OF WASHINGTON,

*Plaintiff-Appellee,*

v.

KALSHIEX, LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:26-cv-01062-JCC (Coughenour, J.)

**KALSHIEX LLC'S EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL OF THE DISTRICT COURT'S MAY 5, 2026 REMAND ORDER
[RELIEF NEEDED BEFORE MAY 19, 2026]**

GRANT R. MAINLAND
MATTHEW J. LAROCHE
ANDREW L. PORTER
NOLA B. HELLER
MILBANK LLP
55 HUDSON YARDS
NEW YORK, NY 10001

STEVEN W. FOGG
CORR CRONIN LLP
1015 SECOND AVENUE, FLOOR 10
SEATTLE, WA 98104

MAY 15, 2026

NEAL KUMAR KATYAL
JOSHUA B. STERLING
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 NEW YORK AVE., N.W.
WASHINGTON, DC 20005
(202) 835-7505
NKATYAL@MILBANK.COM

*Counsel for Defendant-Appellant
KalshiEX LLC*

## CIRCUIT RULE 27-3 CERTIFICATE

I certify the following:

The relief requested in the emergency motion that accompanies this certificate is a stay pending appeal of the district court's May 5, 2026 order remanding Plaintiff-Appellee's enforcement action against Defendant-Appellant KalshiEX LLC ("Kalshi") to Washington state court. **This relief is needed before May 19, 2026 to prevent the case from returning to state court while this Court considers Kalshi's appeal.**

On March 27, 2026, the Washington Attorney General filed an enforcement action against Kalshi in King County Superior Court, alleging that Kalshi's CFTC-regulated event contracts violate the Washington Consumer Protection Act, Wash. Rev. Code § 19.86, the Washington Gambling Act, Wash. Rev. Code § 9.46, and the Recovery of Money Lost at Gambling Act, Wash. Rev. Code § 4.24.070. Ex. A. Plaintiff seeks, among other things, a permanent injunction against Kalshi and "all other persons acting . . . in concert" with it, restitution, disgorgement, civil penalties, and an accounting. Compl. ¶¶ 7.1-7.12. Plaintiff also moved that same day for a preliminary injunction barring Kalshi from marketing, operating, or accepting "bets" in Washington and requiring Kalshi to preserve money and assets obtained from residents of Washington. Ex. B; Pl.'s Mot. for Prelim. Inj. at 4, 14.

i

Kalshi removed the action to the Western District of Washington the same day, asserting multiple grounds for removal, including federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441. Ex. C. Kalshi filed an amended notice of removal on March 30, 2026, adding additional grounds for removal under 28 U.S.C. §§ 1442(a)(1) and (a)(2). Ex. D (Amended Notice of Removal, Mar. 30, 2026). Plaintiff moved to remand on April 6, 2026. Ex. E.

On May 5, 2026, the district court granted Plaintiff's motion to remand but recognized the "relative novelty of the issues presented" and the existence of authority in other jurisdictions supporting removal. Ex. F at 4. The court ordered remand to take effect 14 days after entry—on May 19, 2026. *Id.* Kalshi noticed an appeal and moved in the district court for a stay pending appeal. Ex. G. The district court has not yet ruled on that motion. Kalshi exercised its right to an immediate appeal under 28 U.S.C. § 1447(d), *see BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 245 (2021), and now respectfully moves this Court for a stay.

Kalshi faces imminent and irreparable harm absent a stay. The state court proceedings would undermine Kalshi's appellate rights in this appeal and its related appeals in *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.) (addressing whether federal law preempts application of state gambling laws to

CFTC-regulated event contracts) and *State of Nevada v. KalshiEX LLC*, No. 26-1304 (9th Cir.) (addressing some of the same remand issues raised in this appeal). If the state court reassumes jurisdiction, it could proceed to a final judgment on the merits before this Court can resolve the question of whether this case belongs in federal court instead—thus effectively nullifying Kalshi's right to appeal the remand. And if the state court were to proceed to final judgment before this Court in *Assad* decides whether that state-court proceeding is preempted, it would thwart the *Assad* appeal, subject Kalshi to the risk of conflicting judgments, and create jurisdictional chaos.

Kalshi has filed this motion promptly. The district court has not yet ruled on Kalshi's stay motion, and remand becomes effective on May 19. Because Kalshi faces the prospect of immediate state-court proceedings absent relief from this Court, Kalshi files this motion now and will promptly inform the Court if any of the relief sought becomes unnecessary.

On May 15, 2026, my co-counsel advised Plaintiff's counsel of this motion via email at approximately 8:00 AM PDT. Plaintiff has informed Kalshi that it opposes the relief requested in this motion. I also caused the Court's emergency motions unit to be informed of this filing via email at approximately 10:00 AM PDT. Below I have reproduced the names, telephone numbers, e-mail addresses, and office addresses of the attorneys for all parties:

iii

*Counsel for Defendant-Appellant KalshiEX LLC:*

Steven W. Fogg
(206) 625-8600
sfogg@corrcronin.com

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, WA 98104

Neal Kumar Katyal
(202) 835-7505
nkatyal@milbank.com

Joshua B. Sterling
(202) 835-7535
jsterling@milbank.com

William E. Havemann
(202) 835-7518
whavemann@milbank.com

**MILBANK LLP**
1101 New York Ave., N.W.
Washington, DC 20005

Grant R. Mainland
(212) 530-5251
gmainland@milbank.com

Nola B. Heller
(212) 530-5108
nheller@milbank.com

Matthew J. Laroche
(212) 530-5514
mlaroche@milbank.com

iv

Andrew L. Porter
(212) 530-5361
aporter@milbank.com

**MILBANK LLP**
55 Hudson Yards
New York, NY 10001

*Counsel for Plaintiff-Appellee the State of Washington:*

Andrea Alegrett
andrea.alegrett@atg.wa.gov

Julia K. Doyle
julie.doyle@atg.wa.gov

Ben J. Brysacz
ben.brysacz@atg.wa.gov

Matthew Geyman
matt.geyman@atg.wa.gov

Seann Colgan
seann.colgan@atg.wa.gov

**STATE OF WASHINGTON, OFFICE OF THE ATTORNEY GENERAL**
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Date: May 15, 2026

/s/ *William E. Havemann*
William E. Havemann

v

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 4

    I.     Legal Background ....................................................................... 4

    II.    Factual and Procedural Background ......................................... 5

LEGAL STANDARD .................................................................................... 8

ARGUMENT................................................................................................. 9

    I.     Kalshi Is Likely To Prevail On Appeal. ................................... 10

        A.    The District Court Has Federal Question Jurisdiction Under *Grable*. ............................................................ 10

        B.    Because The CFTC Is A Required Party Under Washington Civil Rule 19, Removal Was Proper Under Section 1442(a)(1). ..............................................15

        C.    Removal Is Proper Under Section 1442(a)(2) Because Kalshi Holds Property Derived From The CFTC And This Action Affects The Validity Of The CEA. ..................17

    II.    Kalshi Will Suffer Irreparable Harm Absent A Stay.................20

    III.   The Equities Strongly Favor A Stay. ....................................... 22

CONCLUSION............................................................................................ 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

INDEX OF EXHIBITS

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Assurance Wireless USA, L.P. v. Reynolds,*
  100 F.4th 1024 (9th Cir. 2024).................................................................. 9

*Benitez-Bithorn v. Rossello-Gonzalez,*
  200 F. Supp. 2d 26 (D.P.R. 2002)...........................................................19

*BP P.L.C. v. Mayor & City Council of Baltimore,*
  593 U.S. 230 (2021)...........................................................................2, 21

*Brennan v. Sw. Airlines Co.,*
  134 F.3d 1405 (9th Cir. 1998) ......................................................... 15, 16

*Bright v. Bechtel Petroleum, Inc.,*
  780 F.2d 766 (9th Cir. 1986) ...................................................................15

*Carney v. Washington,*
  551 F. Supp. 3d 1042 (W.D. Wash. 2021) ...............................................19

*Cothran v. Ellis,*
  16 N.E. 646 (Ill. 1888) ............................................................................. 4

*County of San Mateo v. Chevron Corp.,*
  32 F.4th 733 (9th Cir. 2022)................................................................. 10

*Dold-Apger v. Friends of San Pedro River, Inc.,*
  No. CV-11-397, 2011 WL 8317910 (D. Ariz. Oct. 14, 2011).......................19

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,*
  463 U.S. 1 (1983) ......................................................................... 15, 16

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,*
  958 F.2d 896 (9th Cir. 1992) ..................................................................17

*Ga Gambling Recovery LLC v. Kalshi, Inc.,*
  No. 25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026) .......................12

*Golden Gate Rest. Ass'n v. City & County of San Francisco,*
  512 F.3d 1112 (9th Cir. 2008) .............................................................. 10

vii

# TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
   545 U.S. 308 (2005) ......................................................... 2, 10

*Gunn v. Minton*,
   568 U.S. 251 (2013) ........................................................11, 13

*Hornish v. King County*,
   899 F.3d 680 (9th Cir. 2018)............................................... 11

*KalshiEX LLC v. CFTC*,
   No. 23-cv-3257, 2024 WL 4164694 (D.D.C. Sep. 12, 2024).................... 5

*KalshiEX LLC v. Johnson*,
   No. 26-cv-1715, 2026 WL 1223373 (D. Ariz. May 5, 2026) ..................... 6

*KalshiEX LLC v. Orgel*,
   No. 26-cv-34, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026)................... 6

*KalshiEX, LLC v. Flaherty*,
   172 F.4th 220 (3d Cir. 2026) ....................................1, 13, 14, 20

*KalshiEX, LLC v. Hendrick*,
   817 F. Supp. 3d 1014 (D. Nev. 2025) ....................................13

*Leist v. Simplot*,
   638 F.2d 283 (2d Cir. 1980) ................................................ 4

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ............................................. 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982) ........................................................ 4

*Nken v. Holder*,
   556 U.S. 418 (2009)....................................................... 8, 9

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
   No. 16-cv-534, 2016 WL 3346349 (E.D. Va. June 16, 2016) ..................21

# TABLE OF AUTHORITIES—Continued

Page(s)

*Pasquantino v. United States,*
  544 U.S. 349 (2005) ................................................................ 18

*Providence J. Co. v. FBI,*
  595 F.2d 889 (1st Cir. 1979)...................................................20

*Raskas v. Johnson & Johnson,*
  No. 12-cv-2174, 2013 WL 1818133 (E.D. Mo. Apr. 29, 2013) ................. 22

*Sauk-Suiattle Indian Tribe v. City of Seattle,*
  56 F.4th 1179 (9th Cir. 2022)..................................................14

*St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.,*
  809 F. Supp. 2d 524 (E.D. La. 2011)...........................................19

*Town of Davis v. W. Va. Power & Transmission Co.,*
  647 F. Supp. 2d 622 (N.D. W. Va. 2007) .......................................19

*United States v. 2366 San Pablo Ave.,*
  No. 13-cv-02027, 2015 WL 525711 (N.D. Cal. Feb. 6, 2015)...................22

*Watson v. Philip Morris Cos.,*
  551 U.S. 142 (2007)...........................................................18

**Statutes**

7 U.S.C. § 1a(19)(iv) ............................................................ 11

7 U.S.C. § 1a(47)(A)(ii) ......................................................11, 20

7 U.S.C. § 2(a)(1)(A) ........................................................4, 11, 20

7 U.S.C. § 7a-2(c)(1)............................................................. 5

7 U.S.C. § 7a-2(c)(5)(C)(i) ....................................................... 5

7 U.S.C. § 7b.................................................................... 18

7 U.S.C. § 7b-3(a)(1) ............................................................17

# TABLE OF AUTHORITIES—Continued

Page(s)

7 U.S.C. § 8(b) .................................................................................. 18

28 U.S.C. § 1442 ............................................................................... 10

28 U.S.C. § 1442(a)(1) .......................................................................15

28 U.S.C. § 1442(a)(2) ...................................................................2, 17

28 U.S.C. § 1447(c) ...........................................................................20

28 U.S.C. § 1447(d) ......................................................................10, 21

Wash. Rev. Code § 4.24.070 .......................................................... 7, 11

Wash. Rev. Code § 9.46 ...................................................................... 7

Wash. Rev. Code § 9.46.0237 ...........................................................11, 12

Wash. Rev. Code § 19.86 .................................................................... 7

## Rules and Regulations

17 C.F.R. § 38.3....................................................................................17

17 C.F.R. § 38.3(d)(1)....................................................................... 17, 18

17 C.F.R. § 38.4(b) ............................................................................. 5

17 C.F.R. § 38.5(b) ............................................................................. 6

17 C.F.R. § 38.150 .............................................................................. 4

17 C.F.R. § 38.155 .............................................................................. 4

17 C.F.R. § 38.156 .............................................................................. 4

17 C.F.R. § 38.450 .............................................................................. 5

17 C.F.R. § 38.950 .............................................................................. 5

17 C.F.R. § 38.1101(a) ......................................................................... 5

x

# TABLE OF AUTHORITIES—Continued

<u>Page(s)</u>

17 C.F.R. § 40.2(a)(1) ............................................................... 5

17 C.F.R. § 40.2(c) ................................................................... 5

17 C.F.R. § 40.11(c) ................................................................. 5

17 C.F.R. § 40.11(c)(2) ............................................................. 5

Fed. R. App. P. 8(a)(1)(A) ........................................................ 8

Prediction Markets, 91 Fed. Reg. 12,516 (proposed Mar. 16, 2026) ...................................................................................... 7

Wash. Super. Ct. Civ. R. 19(a) ................................................15

## Legislative Materials

*Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. (1974) ..............................14, 22

H.R. Rep. No. 93-1383 (1974) ................................................. 4

## Other Authorities

CFTC Amicus Br., *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 ...............13

Mot. for Prelim. Inj., *KalshiEX LLC v. Johnson*, No. 2:26-cv-1715 (D. Ariz. Apr. 8, 2026) ......................... 15, 16

## INTRODUCTION

The ultimate issue in this case is whether, under the Commodity Exchange Act ("CEA"), Congress's grant of "exclusive jurisdiction" to the Commodity Futures Trading Commission ("CFTC") preempts Washington's attempt to regulate trading on CFTC-designated contract markets ("DCMs"). That federal question is being litigated around the country. The only appellate court to rule on the question, the Third Circuit, ruled squarely in Kalshi's favor, holding that the CEA "preempts state gambling laws" that seek to regulate "Kalshi's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC." *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 230 (3d Cir. 2026). The issue is also being litigated in this Court, the Fourth Circuit, and the Sixth Circuit. *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.) (argued April 16, 2026); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.) (argued May 7, 2026); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.) (briefing ongoing); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.) (same).

Instead of waiting for guidance from this Court, on March 27, 2026, Plaintiff, the State of Washington, filed a state enforcement action against Kalshi alleging that Kalshi's CFTC-regulated event contracts violate Washington's gambling and consumer-protection statutes. Compl. ¶¶ 4.18-4.31, 6.5-6.13. The same day, Plaintiff filed a motion for a preliminary injunction

1

that would have prohibited Kalshi from offering *all* its event contracts, even though these contracts are lawful under federal law.

Kalshi removed Plaintiff's action to the Western District of Washington, asserting several grounds for removal, including federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and federal officer removal under 28 U.S.C. § 1442(a)(1) and (a)(2). *See* D. Ct. Dkt. Nos. 1, 3. Plaintiff moved to remand, which the district court granted on May 5, 2026. Ex. F at 4. Kalshi noticed an appeal under 28 U.S.C. § 1447(d), *see BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 245 (2021), and moved in the district court for a stay pending appeal, which the district court has not yet ruled on. Ex. G. Kalshi now respectfully moves this Court for a stay pending appeal before the remand order's effective date of May 19, 2026.

A stay is appropriate because Kalshi is likely to succeed on the merits. Removal was proper for at least three reasons. *First*, Plaintiff's action raises a "federal question" because Plaintiff's entitlement to relief under state law turns on a question of federal law. *Second*, the CFTC is a necessary party, and Plaintiff's failure to join it in this action through artful pleading does nothing to undermine federal-officer removal jurisdiction. *Third*, removal was proper under 28 U.S.C. § 1442(a)(2) because Kalshi holds property

2

derived from a federal officer—its CFTC-conferred designation as a contract market—and Plaintiff's action affects the validity of the CEA. This Court is already addressing the first and second issues in Kalshi's appeal of a remand order in a related case. *State of Nevada v. KalshiEX, LLC*, No. 26-1304 (9th Cir.).

If the remand order takes effect on May 19, 2026, Kalshi will face irreparable harm. The parties will be in an untenable position of litigating related issues in different forums, including in Washington King County Superior Court and two panels of this Court. Allowing that to happen would create an untenable risk of subjecting Kalshi to conflicting federal and state court decisions. For example, the state court could enter judgment against Kalshi, finding that the CEA does not preempt state gambling laws, while this Court in *Assad* could arrive at the opposite conclusion. The state court could even take the view that it is not bound by this Court's decision in *Assad*, which would create jurisdictional chaos. Plaintiff's desire to prevent Kalshi's users from trading event contracts does not justify the creation of such a jurisdictional quagmire.

Kalshi respectfully requests a stay of the May 5, 2026 remand order pending appeal.

3

## BACKGROUND

### I.  LEGAL BACKGROUND

Kalshi's event contracts are derivatives: financial instruments whose value depends on one or more underlying commodities or events.  Decades ago, many states regulated derivatives, including by prohibiting them as "gambling."  *E.g.*, *Cothran v. Ellis*, 16 N.E. 646, 648 (Ill. 1888).  But in 1974, Congress passed sweeping amendments to the CEA that brought derivatives under exclusive federal regulation.  Congress created the CFTC and granted it "exclusive jurisdiction" over trading on federally designated "contract market[s]," thus "supersed[ing]" state laws.  7 U.S.C. § 2(a)(1)(A).  Congress's avowed purpose was to "preempt the field insofar as futures regulation is concerned," and it did "not contemplate that there will be a need for any supplementary regulation by the States."  H.R. Rep. No. 93-1383, at 5897 (1974).  Courts immediately recognized the amendments' preemptive effect.  *See, e.g.*, *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.).

The CEA today sets out a "comprehensive regulatory structure" for entities seeking to offer derivatives.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 356 (1982) (citation omitted).  Derivatives exchanges must become DCMs, and CFTC regulations outline the application process and requirements to become a DCM.  17 C.F.R. §§ 38.150, 38.155,

4

38.156. CFTC regulations also detail CFTC oversight and reporting require-ments for DCMs. *Id.* §§ 38.950, 38.450, 38.1101(a).

The CEA prescribes a detailed system for the approval and listing of contracts on DCMs. DCMs may list new contracts by self-certifying compli-ance with applicable requirements. 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. §§ 38.4(b), 40.2(a)(1). The CFTC may stay listing of a new contract in certain circumstances. 17 C.F.R. § 40.2(c).

Certain "[e]vent contracts" are subject to a "Special [R]ule": If they involve "gaming" or certain other activities, the CFTC "may"—but need not—prohibit them as "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(C)(i). If the CFTC concludes that an event contract may fall within an enumerated category in the Special Rule, it may subject the contract to a 90-day public-interest review. 17 C.F.R. § 40.11(c). Following review, the CFTC "shall issue an order approving or disapproving" the contract. *Id.* § 40.11(c)(2).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

1. In 2020, the CFTC designated Kalshi as a DCM. *See KalshiEX LLC v. CFTC*, No. 23-cv-3257, 2024 WL 4164694, at *4 (D.D.C. Sep. 12, 2024). Since then, Kalshi has been regulated under federal law alongside other DCMs like the Chicago Mercantile Exchange.

Kalshi offers event contracts related to climate, technology, popular culture, economics, agriculture, and other tangible commodities. Each contract has a yes (the event will occur) and a no (it will not) position, allowing customers to hedge and trade on financially significant events. Prices fluctuate based on market participants' perceptions of the likelihood the event will occur, giving these contracts significant predictive value.

In January 2025, Kalshi began offering contracts on sports events. When Kalshi first self-certified its sports-event contracts, the CFTC asked Kalshi to submit a "[d]emonstration of compliance" with the CEA. 17 C.F.R. § 38.5(b). Kalshi responded with detailed filings describing the contracts' compliance with the CEA and CFTC regulations. *KalshiEX LLC v. Orgel*, No. 26-cv-34, 2026 WL 474869, at *5 (M.D. Tenn. Feb. 19, 2026). The CFTC took no further action. It has since permitted Kalshi and other prediction markets to list tens of thousands of sports-event contracts without objection.

Over the past year, many state regulators have attempted to regulate and/or ban Kalshi's event contracts. These issues are currently being litigated around the country, including in this Court and other districts in this Circuit. *See KalshiEX LLC v. Johnson*, No. 26-cv-1715, 2026 WL 1223373, at *9 (D. Ariz. May 5, 2026) (granting preliminary injunction enjoining application of Arizona's gambling laws to DCMs). The United States and CFTC

have filed federal-court actions against Arizona, Connecticut, Illinois, New York, and Wisconsin to enjoin application of state gambling laws to CFTC-regulated DCMs. *See United States v. Arizona*, No. 2:26-cv-02246 (D. Ariz. 2026); *United States v. Connecticut*, No. 3:26-cv-498 (D. Conn. 2026); *United States v. Illinois*, No. 1:26-cv-3659 (N.D. Ill. 2026); *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. 2026); *United States v. Wisconsin*, No. 2:26-cv-749 (E.D. Wis. 2026). The CFTC also has issued an Advance Notice of Proposed Rulemaking related to Prediction Markets, confirming that it has exclusive jurisdiction over event contracts, including sports-event contracts. *See* Prediction Markets, 91 Fed. Reg. 12,516 (proposed Mar. 16, 2026).

2. On March 27, 2026, the State of Washington filed an enforcement action against Kalshi in King County Superior Court, alleging that Kalshi's CFTC-regulated event contracts violate the Washington Consumer Protection Act, Wash. Rev. Code § 19.86; the Washington Gambling Act, Wash. Rev. Code § 9.46; and the Recovery of Money Lost at Gambling Act, Wash. Rev. Code § 4.24.070. Compl. ¶¶ 4.18-4.31, 6.5-6.13. Every claim is predicated on the allegation that Kalshi's event contracts constitute "illegal gambling." The same day the complaint was filed, Plaintiff also moved for a preliminary injunction. Notably, Plaintiff's Complaint is not limited to sports-event

contracts but seeks to ban every contract Kalshi offers on its exchange, including categories—such as weather events—that have been offered on DCMs for years. *See* Compl. ¶¶ 1.4, 4.22, 4.25.

Kalshi removed to federal court later that day, Ex. C, and Plaintiff moved to remand on April 6, 2026, Ex. E. The district court granted Plaintiff's motion on May 5, 2026. The court ordered remand "effective 14 days after the date of this order"—*i.e.*, May 19, 2026. Ex. F at 4.

Kalshi appealed the district court's remand order on May 8, 2026. Dkt. 26, *Washington v. KalshiEX LLC*, No. 2:26-cv-01062 (W.D. Wash. May 8, 2026). The same day, Kalshi asked the district court for a stay pending appeal, which is pending. Ex. G. Kalshi now respectfully moves in this Court for a stay pending appeal.

## LEGAL STANDARD

This Court may "stay" an "order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). In deciding whether to grant a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

8

The "first two factors" "are the most critical," and the last two "merge when the Government is the opposing party." *Id.* at 434-35. This Court applies a "sliding scale" approach permitting a stay where the applicant raises "a 'serious question' on the merits when the balance of hardships tips sharply in their favor." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (citation omitted).

## ARGUMENT

The necessity of a stay is plain. In *Assad*, this Court is considering whether state efforts to enforce gambling laws against Kalshi intrude upon the exclusive jurisdiction of a federal agency and thus violate the Supremacy Clause. Rather than wait for this Court's decision, Washington brought this enforcement action in state court and sought a preliminary injunction, creating an untenable risk of conflicting state and federal decisions on the same basic question—the state's authority to regulate Kalshi. Yet when Kalshi sought to avoid this result by exercising its right to remove the state case to federal court, the federal district court erroneously remanded. Now, the state court may add to the jurisdictional chaos by issuing a ruling that tramples on the CFTC's exclusive jurisdiction and threatens to preempt this Court's impending ruling on the important *federal* questions in *Assad*. Because a stay from this Court will avoid these obvious harms and because all

9

of the requirements for a stay are met, this Court should expeditiously grant Kalshi relief.

## I.   KALSHI IS LIKELY TO PREVAIL ON APPEAL.

To establish that it is "likely to succeed on the merits," the moving party need only "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Golden Gate Rest. Ass'n v. City & County of San Francisco,* 512 F.3d 1112, 1115-16 (9th Cir. 2008) (citations omitted); *see Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (movant "need not demonstrate that it is more likely than not that [it] will win on the merits").

The remand order is appealable because Kalshi removed pursuant to 28 U.S.C. § 1442. *See* 28 U.S.C. § 1447(d); D. Ct. Dkt. Nos. 1, 3. Because this Court has jurisdiction, it may "consider all bases for removal" Kalshi has "raised." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022). Kalshi's grounds for removal raise serious legal questions that warrant a stay.

### A.   The District Court Has Federal Question Jurisdiction Under *Grable*.

The Supreme Court has long held "that in certain cases, federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S at 312. State-law claims give rise to federal

question jurisdiction where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Each element is met here.

*Federal issues are necessarily raised.* A federal law issue is "necessarily raised" when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law." *Hornish v. King County*, 899 F.3d 680, 688 (9th Cir. 2018) (citations omitted). Here, whether Plaintiff is entitled to relief under the statutes it invokes turns on federal law. *See* Wash. Rev. Code §§ 4.24.070, 9.46.0237.

Begin with the Washington Gambling Act. Before Washington can recover under the Act, it must prove that Kalshi is engaging in "illegal gambling." Wash. Rev. Code § 4.24.070. This necessarily raises an embedded federal issue: whether Kalshi's event contracts are lawful under the CEA. Kalshi is a CFTC-registered DCM offering event contracts pursuant to the CEA. The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery" on designated exchanges, which include event contracts. 7 U.S.C. §§ 1a(19)(iv), 1a(47)(A)(ii), 2(a)(1)(A). And Kalshi is registered as a DCM with the CFTC in compliance with federal law. Thus, federal law allows Kalshi to list event

11

contracts for trading unless the CFTC specifically prohibits them, which the CFTC has chosen not to do here.

Washington's definition of "gambling" reinforces why a federal question is embedded here. Washington's definition of "gambling" does not include "bona fide business transactions" involving "contracts for the purchase or sale at a future date of . . . commodities." Wash. Rev. Code § 9.46.0237. Whether Kalshi's event contracts are "bona fide" commodity transactions cannot be answered without resort to federal law because Kalshi offers event contracts pursuant to the CEA and the CFTC's exclusive jurisdiction.

The district court disagreed, reasoning that the state statutes targeted activities determined to be gambling under state law. Ex. F at 3. But this misconstrues the statutory language at issue, which is not predicated on whether Kalshi's activities were "illegal" or "bona fide business transactions" only under state law. *Ga Gambling Recovery LLC v. Kalshi, Inc.*, No. 25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), rejected an identical argument in denying a motion to remand. There, the plaintiff sued under Georgia law, seeking to recover money lost from trading event contracts on Kalshi's DCM, which the plaintiff characterized as "unlawful gambling." *Id.* at *3. Under Georgia law, however, the money was recoverable only if the "contract [was] unlawful under the law governing its validity." *Id.* Although the

12

Georgia statute made no reference to federal law, the court held that "Plaintiff's ability to sustain a claim upon which relief may be granted necessarily depend[ed] on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction." *Id.*

*The other* Grable *factors support removal.* The parties actually dispute whether, under the CEA, Kalshi's activities amount to illegal gambling and are not *bona fide* commodities transactions. *Gunn*, 568 U.S. at 258. And the dispute involves "serious [federal] questions on the merits," *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1023 (D. Nev. 2025), which, as the CFTC recently explained, could result in "a seismic shift in the longstanding status quo between CFTC and state authority," CFTC Amicus Br. 2, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2.

Litigation concerning these questions is pending in numerous courts around the country, further demonstrating their substantiality. The Third Circuit has already held that the CEA "preempts state gambling laws that seek to regulate futures trading." *Flaherty*, 172 F.4th at 230. This Court is poised to decide the same question in *Assad*, and the Fourth and Sixth Circuits are considering materially similar appeals. Moreover, Congress's intent to avoid the "total chaos" of 50 states attempting to regulate DCMs like

13

Kalshi weighs in favor of having these substantial federal issues—which go to the heart of the exclusive regulatory scheme Congress created more than 50 years ago—in federal court. *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong. 685 (1974) ("*Senate Hearings*") (statement of Sen. Clark).

The district court reasoned that the state has an interest in regulating gambling. But the core question in this case is the proper interpretation of a federal statutory scheme—the CEA—which is appropriately resolved by a federal court. This Court has found that the "federal-state balance approved by Congress" is not disrupted when "Congress intended the *federal government* to have comprehensive control" over an area. *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022). That is exactly what Congress intended concerning the regulation of transactions occurring on a DCM. *Flaherty*, 172 F.4th at 230. And the federal interest is even more pronounced today given recent developments, including the Third Circuit's decision in *Flaherty*, the District of Arizona's decision in *Johnson*, and the CFTC's five federal-court actions against states attempting to apply state gambling laws to DCMs.

14

**B.    Because The CFTC Is A Required Party Under Washington Civil Rule 19, Removal Was Proper Under Section 1442(a)(1).**

Plaintiff's "artful pleading" provides an additional basis for reversing the remand order. *See Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409, 1412 (9th Cir. 1998); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983) (a plaintiff "may not defeat removal" through artful pleading). Because the CFTC is a necessary party, removal was authorized under 28 U.S.C. § 1442(a)(1). *Cf. Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) ("A plaintiff will not be allowed to conceal the true nature of a complaint through 'artful pleading.'").

Washington Superior Court Civil Rule 19 requires joinder of any person whose absence prevents complete relief or whose claimed interest would as a practical matter be impaired by disposition without their presence. Wash. Super. Ct. Civ. R. 19(a). Each of those bases for joinder applies here. Complete relief cannot be accorded among the parties without the CFTC's presence. Kalshi is subject to a federal mandate to provide "impartial national access" to its platform. Mot. for Prelim. Inj. at 18, *KalshiEX LLC v. Johnson*, No. 2:26-cv-1715 (D. Ariz. Apr. 8, 2026) ("CFTC TRO Br."). In challenging state actions to regulate DCMs, the CFTC made clear that "state-imposed restrictions on access to markets" would "make it impossible for the

regulated DCMs to comply with federal regulations." *Id.* Relief cannot be adequately granted in the absence of the CFTC's participation concerning this issue.

The CFTC also has claimed a substantial interest relating to this action. The CFTC has now brought five lawsuits against states seeking to apply their gambling laws to regulate event contracts offered on DCMs and filed an amicus brief in this Court on the same issue. The CFTC has made clear that it has "at least two legally protected 'sovereign injuries'" from states' attempts to apply gambling laws to CFTC-regulated derivatives markets: (1) the invasion of the CFTC's exclusive jurisdiction over DCMs, and (2) the undermining of federal regulatory uniformity that Congress intended to achieve through the CEA. CFTC TRO Br. at 6-8.

The district court disagreed, citing an absence of authority supporting that the omission of a necessary federal party under CR 19 triggers § 1442(a)(1) removal. But long-settled "artful pleading" principles provide ample authority for authorizing removal in this case, particularly where the CFTC has directly asserted its substantial interest in several parallel proceedings in federal court. *Brennan*, 134 F.3d at 1409, 1412; *Franchise Tax Bd.*, 463 U.S. at 22. Plaintiff cannot plead its way around that interest to stay in state court.

16

**C.    Removal Is Proper Under Section 1442(a)(2) Because Kalshi Holds Property Derived From The CFTC And This Action Affects The Validity Of The CEA.**

Removal was also proper pursuant to 28 U.S.C. § 1442(a)(2), which provides another basis for reversing the remand order.  Section 1442(a)(2) authorizes removal of any civil action against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States."  Both those elements are met here because Kalshi's designation as a contract market under the CEA constitutes property derived from the CFTC, and Washington's action directly affects the validity of the CEA.

*KalshiEX is a Property Holder with Title Derived from the CFTC*.  A government license grants a property right if the right is "capable of precise definition," "capable of exclusive possession or control," and owned by an entity that has "established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992).  All three criteria are met here:  Kalshi's designation as a DCM (i) creates a clearly defined property right allowing Kalshi to operate a facility for the trading or processing of swaps, 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. § 38.3; (ii) is capable of exclusive possession or control by Kalshi unless transferred by it pursuant to the CEA and its regulations, 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. §

17

38.3(d)(1); and (iii) establishes that KalshiEX has a legitimate claim of exclusivity over its DCM designation, 17 C.F.R. § 38.3(d)(1).

Indeed, Kalshi's designation as a DCM also comes with the procedural protections typical of property rights. The designation as a contract market cannot be suspended or revoked by the CFTC without cause and only after providing Kalshi notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . shall be cause [for suspension or revocation] . . . ."); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market).

The district court concluded that § 1442(a)(2) applies to real, not intangible, property. But nothing in the text of § 1442(a)(2) limits its reach to real property, and the federal officer removal statute "must be liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citation omitted). There is no textual reason to provide a narrowing construction here. The Supreme Court has recognized that intangible rights with commercial value (such as entitlements to collect money) constitute "'property' as that term ordinarily is employed." *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005).

18

The district court cited out-of-circuit district court cases that are inapposite. In *St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524 (E.D. La. 2011), the defendant argued that it acquired a property right through a contract with a federal officer to perform services. But that is nothing like Kalshi obtaining a license from the CFTC pursuant to the requirements set forth in federal law. The other cases involved only real property and so did not address whether other types of property interests are encompassed within § 1442(a)(2). *Town of Davis v. W. Va. Power & Transmission Co.*, 647 F. Supp. 2d 622, 627 (N.D. W. Va. 2007); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 31 (D.P.R. 2002).

*Plaintiff's action "affects the validity" of the CEA*. The removal statute's purpose is to provide a layer of protection from local prejudice for those acting under federal authority so that the federal government can function. *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053-54 (W.D. Wash. 2021); *Dold-Apger v. Friends of San Pedro River, Inc.*, No. CV-11-397, 2011 WL 8317910, at *2 (D. Ariz. Oct. 14, 2011). Thus, a lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Carney*, 551 F. Supp. 3d at 1053-54. Plaintiff's lawsuit does exactly that.

Plaintiff's action seeks to declare that every event contract Kalshi offers is "illegal gambling," to enjoin Kalshi from offering event contracts in

19

Washington, to disgorge proceeds, and to enjoin "all other persons acting . . . in concert" with Kalshi. Compl. ¶¶ 7.1-7.9. A state-court order declaring Kalshi's federally authorized event contracts categorically unlawful in Washington is functionally indistinguishable from stripping the CFTC of its exclusive jurisdiction under the CEA to regulate DCMs. Applying state gambling laws to event contracts on a DCM "directly conflicts with the full purposes and objectives" of Congress and "would create an obstacle to executing the [CEA]." *Flaherty*, 172 F.4th at 230. That conflict places the validity of the CEA—including the definition of "swap," 7 U.S.C. § 1a(47)(A)(ii), and the grant of "exclusive jurisdiction" over DCM trading, *id*. § 2(a)(1)(A)—squarely at issue.

## II. KALSHI WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Once remand becomes effective on May 19, 2026, "the State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). Kalshi is likely to suffer substantial irreparable harm if the state court proceeds.

*First*, allowing the case to return to state court would undermine Kalshi's appellate rights here. If the state court resumes jurisdiction, it can proceed—perhaps even to a final judgment—before this Court can resolve the appeal. That would render the remand order "irrevocable" without a chance for this Court to "take a fresh look at the decision." *Providence J. Co. v. FBI*,

20

595 F.2d 889, 890 (1st Cir. 1979). Congress made the judgment that "an order remanding a case to the State court from which it was removed pursuant to section 1442 . . . *shall be reviewable by appeal.*" 28 U.S.C. § 1447(d) (emphasis added). In cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP*, 593 U.S. at 245. Functionally stripping Kalshi of its appellate rights would subject it to irreparable harm, contrary to Congress's intent in providing for appellate review in Section 1447(d).

*Second*, the state court proceedings undermine Kalshi's appellate rights in *Assad*. If the state court proceeds to a final judgment, it could deem Kalshi issue-precluded from continuing to litigate CEA preemption issues before this Court in *Assad*. Worse, it would invite Plaintiff to take the position that it is not bound by any decision this Court renders in *Assad*. That would create a jurisdictional morass that would worsen if other states followed Washington's lead. Because any "intervening state court judgment or order could render the appeal meaningless," Kalshi faces "severe and irreparable harm if no stay is issued." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 16-cv-534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016). By contrast, if the action remains pending in the district court

21

rather than in state court, this Court's ability to resolve the important preemption issues in *Assad* can be preserved.

## III. THE EQUITIES STRONGLY FAVOR A STAY.

Denying a stay here would create judicial chaos that will harm not only Kalshi, but the public, too. There is a "cognizable public interest in promoting judicial economy, and avoiding duplicative litigation and inconsistent rulings by granting a stay." *United States v. 2366 San Pablo Ave.*, No. 13-cv-02027, 2015 WL 525711, at \*5 (N.D. Cal. Feb. 6, 2015); *see also Raskas v. Johnson & Johnson*, No. 12-cv-2174, 2013 WL 1818133, at \*2 (E.D. Mo. Apr. 29, 2013) (similar).

Absent a stay, the parties will proceed simultaneously along multiple tracks: briefing and arguing Kalshi's appeal in this Court while litigating Plaintiff's state-law claims in King County Superior Court, all while two related appeals (one on remand and one on the merits) proceed in this Court. *State of Nevada v. KalshiEX, LLC*, No. 26-1304 (9th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.). This is an absurd situation given that this Court has already heard argument in *Assad* and *Nevada* on April 16, 2026. It illustrates exactly the "total chaos" Congress feared from states attempting to enforce their own laws notwithstanding the CEA. *Senate Hearings* at 685.

22

Allowing the state court to proceed could eventually put the district court in the uncomfortable position of having to sift through and evaluate the state court's prior actions. If a stay is denied but this Court later concludes that Kalshi properly removed this action, the district court will have to painstakingly unwind any decisions and measures the state court has taken. That will waste judicial and party resources, while inviting duplicative and inconsistent decisions.

Plaintiff cannot credibly claim prejudice from a brief pause for appellate review. Plaintiff did not file this enforcement action until late March 2026—more than a year after Kalshi began offering sports-event contracts nationally and well after extensive related federal litigation had commenced. Any purported harm is sharply reduced by Kalshi's willingness to pursue expedited review.

## CONCLUSION

The Court should stay the remand order pending appeal.

23

Date: May 15, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*

GRANT R. MAINLAND
MATTHEW J. LAROCHE
ANDREW L. PORTER
NOLA B. HELLER
MILBANK LLP
55 Hudson Yards
New York, NY 10001

STEVEN W. FOGG
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA 98104

NEAL KUMAR KATYAL
JOSHUA B. STERLING
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7505
nkatyal@milbank.com

*Counsel for Defendant-Appellant KalshiEX LLC*

24

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 4966 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f).

This motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Georgia font 14-point typeface.

Date: May 15, 2026

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the ACMS system.


Date: May 15, 2026                    */s/ Neal Kumar Katyal*
                                      Neal Kumar Katyal

## INDEX OF EXHIBITS

| Exhibit | Document Description |
|---|---|
| A | Compl., State of Washington v. KalshiEX LLC, No. 26-2-10264-3 SEA (King Cnty. Super. Ct. Mar. 27, 2026) (W.D. Wash. Dkt. 1-2) |
| B | Pl.'s Motion for Preliminary Injunction, State of Washington v. KalshiEX LLC, No. 26-2-10264 SEA (King Cnty. Super. Ct. Mar. 27, 2026) (W.D. Wash. Dkt. 1-3) |
| C | Notice of Removal (W.D. Wash. Mar. 27, 2026) (Dkt. 1) |
| D | Amended Notice of Removal (W.D. Wash. Mar. 30, 2026) (Dkt. 3) |
| E | Pl.'s Motion to Remand (W.D. Wash. Apr. 6, 2026) (Dkt. 17) |
| F | Order Granting Motion to Remand (W.D. Wash. May 5, 2026) (Dkt. 25) |
| G | Kalshi's Motion for Stay Pending Appeal (W.D. Wash. May 8, 2026) (Dkt. 27) |