**No. 26-3106**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE OF WASHINGTON,
*Plaintiff-Appellee*,

v.

KALSHIEX, LLC,
*Defendant-Appellant*,

On Appeal from the United States District Court for the
Western District of Washington, No. 2:26-cv-01062-JCC (Coughenour, J.)

**PLAINTIFF-APPELLEE STATE OF WASHINGTON'S OPPOSITION TO
EMERGENCY MOTION FOR STAY PENDING APPEAL**

Nicholas W. Brown,
 Attorney General
Matthew Geyman
Julia K. Doyle
Seann Colgan
Benjamin Brysacz*
Terrence Mangan*
 Assistant Attorneys General
State of Washington,
 Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
*Attorneys for Plaintiff-Appellee*

## TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................1

II.   FACTUAL BACKGROUND..........................................................2

    A.  Washington Law Comprehensively Regulates Gambling .................2

    B.  Kalshi Offers Illegal Gambling Activities in Washington.................4

    C.  Washington Sued Kalshi for Violations of Washington Law............5

    D.  Kalshi's Repeated Attempts to Remove State-Law Claims Have Been Unsuccessful..................................................................6

    E.  Procedural History of This Appeal.....................................................7

III.  ARGUMENT .................................................................................8

    A.  Legal Standards ................................................................................9

    B.  Kalshi Is Unlikely to Succeed on the Merits...................................10

        1.  Kalshi's federal question jurisdiction argument is baseless ......11

        2.  Kalshi is not a "federal officer" under § 1442(a).......................13

    C.  Kalshi Will Not Be Irreparably Harmed Absent a Stay...................16

    D.  A Stay Would Substantially Injure Washington and the Public Interest ...........................................................................................17

IV.  CONCLUSION............................................................................18

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ah Sin v. Wittman*,
    198 U.S. 500 (1905) ................................................................... 12, 18

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) ...............................................................................16

*Benitez-Bithorn v. Rossello-Gonzalez*,
    200 F. Supp. 2d 26 (D.P.R. 2002) ....................................................15

*California ex rel. Harrison v. Express Scripts, Inc.*,
    139 F.4th 763 (9th Cir. 2025).................................................. 9, 10, 17

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992)..............................................................14

*Georgia Gambling Recovery LLC v. Kalshi Inc.*,
    No. 4:25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026) ............ 7, 11, 12, 13

*Illinois Gambling Recovery, LLC v. Kalshi Inc.*,
    No. 25-cv-11374, 2026 WL 1164703 (N.D. Ill. April 29, 2026)..........................7

*Kalshiex, LLC v. Hendrick, et al.*,
    No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282 (D. Nev. Nov. 24,
    2025) ..................................................................................... 17, 18

*KalshiEx, LLC v. Hendrick*,
    No. 2:25-cv-575-APG-BNW, 2025 WL 3642346 (D. Nev. Dec. 16, 2025) .......10

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*,
    No. 3:25-cv-00054, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026)..................... 6, 13

*Massachusetts v. KalshiEX LLC*,
    No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025)........................................6

*Murphy v. Natl. Collegiate Athletic Assn.*,
    584 U.S. 453 (2018) ...................................................................12

*Nevada v. Bank of Am. Corp.*,
   672 F.3d 661 (9th Cir. 2012) ................................................................13

*Nevada v. Kalshi. State of Nevada ex rel. Nevada Gaming Control Board v.*
   *KalshiEX, LLC*, No. 26-1304 (9th Cir. Mar. 19, 2026) ............................... 2, 8, 16

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................... 1, 9, 10, 17

*Ohio Gambling Recovery, LLC v. Kalshi Inc.*,
   No. 4:25-cv-1573, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026) .................. 6, 13

*Rousso v. State*,
   170 Wash. 2d 70 (2010) ................................................................3

*St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.*
   809 F. Supp. 2d 524 (E.D. La. 2011) ....................................................15

*State ex rel. Schafer v. Spokane*,
   109 Wash. 360 (1920) ..................................................................3

*State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC*,
   No. 2:26-cv-00406, 2026 WL 700039 (D. Nev. Mar. 12, 2026) ........ 2, 10, 17, 18

*State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC*,
   No. 2:26-CV-00406, 2026 WL 579364 (D. Nev. Mar. 2, 2026) .......... 6, 7, 12, 14

*State of Nevada ex rel. Nevada Gaming Control Board, v. Blockratize Inc.*,
   No. 3:26-cv-00089, 2026 WL 700082 (D. Nev. Mar. 12, 2026) ........................17

*Takeda v. Nw. Nat. Life Ins. Co.*,
   765 F.2d 815 (9th Cir. 1985) ............................................................13

*Town of Davis v. W. Virginia Power and Transmission Co., Inc.*,
   647 F. Supp. 2d 622 (N.D. W.Va. 2007) ..............................................15

*Watson v. Philip Morris Companies, Inc.*,
   551 U.S. 142 (2007) ....................................................................15

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ....................................................................13

iii

## Statutes

18 U.S.C. § 1084...............................................................................................13

28 U.S.C. § 1441............................................................................................1, 7

28 U.S.C. § 1442.......................................................................... passim

Wash. Rev. Code § 19.86.....................................................................................5

Wash. Rev. Code § 19.86.080..............................................................................5

Wash. Rev. Code § 4.24.070................................................................................5

Wash. Rev. Code § 9.46...................................................................................3, 5

Wash. Rev. Code § 9.46.010................................................................................3

Wash. Rev. Code § 9.46.0237............................................................................12

Wash. Rev. Code § 9.46.240................................................................................3

## Constitutional Provisions

Wash. Const. art. II, § 24 ....................................................................................3

## Other Authorities

Hing, N., et al., *An integrative review of research on gambling and domestic and family violence: Fresh perspectives to guide future research*, 13 Frontiers Psych. (Oct. 2022)................................................................................18

Potenza, M., et al., *Gambling Disorder*, Nature Reviews Disease Primers, Vol. 5, No. 51 (2019) ....................................................................................................18

## I. INTRODUCTION

The State of Washington (Washington) brought this enforcement action in Washington state court to enjoin Defendant KalshiEX, LLC (Kalshi) from offering online gambling in Washington in violation of state law. Kalshi removed the case to federal court, but the district court found no obvious affirmative federal question to warrant removal under 28 U.S.C. § 1441. As the court recognized, it is well established that gambling regulation is within a state's police powers, and removal would disturb the federal-state balance provided by Congress. The court also properly rejected Kalshi's novel but spurious argument that removal is appropriate under 28 U.S.C. § 1442, finding nothing suggesting that Washington is directly attempting to interfere with Kalshi's dealings with the Commodities Futures Trading Commission (CFTC).

Kalshi now seeks emergency relief from this Court without waiting for the district court to rule on its request for a stay pending appeal. This Court should deny Kalshi's emergency motion because Kalshi has not established a basis for a discretionary stay under the factors outlined in *Nken v. Holder*, 556 U.S. 418, 434 (2009). Specifically, Kalshi has not made the "strong showing," required under *Nken*, that its appeal is likely to succeed, that it will be irreparably injured absent a stay, or that a stay would not substantially injure Washington or the public interest. *Id.* at 434. As the district court correctly found, Washington's well-pleaded

1

complaint does not raise substantial federal law issues, does not interfere with Kalshi's non-gambling activities under the jurisdiction of the CFTC, and does not impact any federally-derived "property." And, as other courts have already found, Kalshi will not be irreparably harmed absent a stay, while a stay would undoubtedly cause significant harm to Washington and the public interest by halting state enforcement efforts against illegal gambling. *See State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC,* No. 2:26-cv-00406, 2026 WL 700039 at *3 (D. Nev. Mar. 12, 2026) (finding *Nken* factors weigh against stay).

Through this motion, Kalshi seeks this Court's permission to continue to violate state law while its appeal is pending. The Court already denied such relief to Kalshi on virtually identical issues in *Nevada v. Kalshi*. *State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC,* No. 26-1304, Dkt. 12 (9th Cir. Mar. 19, 2026). It should do the same here, and reject Kalshi's attempt to obtain federal appellate review by raising baseless arguments unsupported by law or facts.

## II.  FACTUAL BACKGROUND

### A.  Washington Law Comprehensively Regulates Gambling

As discussed in Washington's Motion to Remand, Washington's residents, Legislature, and courts have long expressed concerns for the potential harms caused by gambling. The Washington Legislature has plenary authority to prohibit or strictly limit gambling in the state. Motion to Remand, Dkt. 6.6, Ex. E (citing Wash. Const.

2

art. II, § 24; Wash. Rev. Code § 9.46.010; *State ex rel. Schafer v. Spokane*, 109 Wash. 360, 362-63 (1920)). As initially adopted in 1889, article II, section 24 of the Washington Constitution banned all gambling. It was not until 1973 that the Washington Legislature, acting pursuant to a 1972 amendment to the Constitution, enacted Washington's Gambling Act, Wash. Rev. Code § 9.46, which for the first time permitted some specifically limited forms of gambling activities under highly regulated circumstances.

The Gambling Act prohibits all online gambling in Washington, including online sports wagering, bookmaking, professional gambling, and other gambling-related activities. Wash. Rev. Code § 9.46.240; *see Rousso v. State*, 170 Wash. 2d 70, 74-75 (2010) ("Internet gambling in the state of Washington is effectively banned" by Wash. Rev. Code § 9.46.240). The Gambling Act advances a two-fold policy: (1) to keep the criminal element out of gambling; and (2) to promote the social welfare by "limiting the nature and scope of gambling activities and by strict regulation and control." Wash. Rev. Code § 9.46.010. In furtherance of this policy, Washington's Legislature directed that "[a]ll factors incident to the activities authorized in [the Act] shall be closely controlled, and the provisions of [the Act] shall be liberally construed to achieve such end." *Id.*

3

**B.    Kalshi Offers Illegal Gambling Activities in Washington**

Kalshi operates an online betting platform that allows consumers nationwide, including in Washington, to purchase a "yes" or "no" position on the outcome of various events, including sporting events, elections, and even the number of measles cases in the country. Complaint, Dkt. 6.2, Ex. A, ¶¶ 4.1-4.15. If the consumer bets correctly, they receive a payout. If not, they receive nothing. *Id.* ¶ 4.15. Orders and payments are transacted over the internet, using electronic accounts Kalshi maintains for bettors on its platform. *Id.* ¶ 4.12. Kalshi earns transaction fees when bettors place bets. *Id.* ¶ 4.13. Kalshi calls the individual betting opportunities on its platform "event contracts," and refers to itself as a "prediction market."

Kalshi's platform launched in 2021, initially focusing on topics like inflation, the consumer price index, and macroeconomic benchmarks. *Id.* ¶ 4.2. At that time, Kalshi disavowed sports-based offerings. *Id.* In 2024, Kalshi added political events. *Id.* ¶ 4.2. Then, in January 2025, Kalshi added sporting events, which eclipsed all other platform activity. *Id.* ¶¶ 4.4-4.7. Kalshi later expanded its sports betting by offering bets on the total number of points scored (known to sports-bettors as "over/under" bets), the margin of victory ("spread" bets), and innumerable other non-final outcomes and combinations of outcomes ("proposition" bets and "parlays"). *Id.* ¶ 4.8.

Kalshi's offerings have expanded over time, and now include, for example, so-called "mentions" betting, where users bet on whether public figures, media announcers, or others will say certain words during public appearances. *Id.* ¶ 4.4. Kalshi's advertising and marketing boasts that it has made it possible to bet on "everything." *Id.* ¶ 4.1.

**C.  Washington Sued Kalshi for Violations of Washington Law**

Washington's Attorney General sued Kalshi on March 27, 2026, in King County Superior Court. Washington's claims against Kalshi arise under the Washington Consumer Protection Act (CPA), Wash. Rev. Code § 19.86 et seq., and Recovery of Money Lost at Gambling Act (RMLGA), Wash. Rev. Code § 4.24.070, and are rooted in Kalshi's underlying violations of the Gambling Act, Wash. Rev. Code § 9.46.

Washington alleges that Kalshi violates the Gambling Act by engaging in illegal online gambling, sports wagering, bookmaking, and professional gambling, and by illegally keeping gambling records. Complaint, Dkt. 6.2, Ex. A, ¶¶ 4.18-4.31. Washington's allegations are based solely on Washington law, and Washington, through the Consumer Protection Division of the Washington Attorney General's Office, is the sole plaintiff in this matter, acting under the authority granted to the Attorney General under state law. Wash. Rev. Code § 19.86.080(1).

**D.    Kalshi's Repeated Attempts to Remove State-Law Claims Have Been Unsuccessful**

Over the past year, multiple state regulators have attempted to rein in Kalshi's illegal gambling operations. Massachusetts, Nevada, Michigan, Arizona, Wisconsin, and Washington have lodged state gambling law and consumer protection claims against Kalshi in their respective state courts, while Kalshi has preemptively sued additional states in federal court. Kalshi immediately removed each of the state court actions. To date, Kalshi's removal arguments have been rejected by United States District Courts for the District of Massachusetts and the District of Nevada. *See State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC*, No. 2:26-CV-00406-MMD-MDC, 2026 WL 579364, at *1 (D. Nev. Mar. 2, 2026) (remanding to state court); *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (Dkt. 34) (same). Remand motions are also currently pending in the Western District of Michigan, *Nessel v. KalshiEX, LLC*, No. 1:26-cv-00731 (Dkt. 7), and the Western District of Wisconsin, *State of Wisconsin v. Kalshi, Inc.*, No. 3:26-cv-00378 (Dkt. 28).

Kalshi has also removed several private party actions alleging violations of state gambling laws. Three of these cases have already been remanded to state courts. *See Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-cv-1573, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026); *Illinois Gambling*

6

*Recovery, LLC v. Kalshi Inc.*, No. 25-cv-11374, 2026 WL 1164703 (N.D. Ill. April 29, 2026). Only one court has declined to remand after removal by Kalshi of claims brought under state law. *See Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026). There, however, the state law at issue required the plaintiff to prove that the challenged contracts were illegal under federal law. *See Nevada v. KalshiEX*, 2026 WL 579364, at *3 (distinguishing *Georgia Gambling Recovery* on these grounds).

**E.      Procedural History of This Appeal**

Washington commenced this action in state court on March 27, 2026. Dkt 6.2. Kalshi removed this case to federal district court arguing that Washington's state law claims "require the adjudication of federal-law issues" under 28 U.S.C. § 1441, and that Kalshi, a private entity, is entitled to federal officer removal 28 U.S.C. § 1442(a)(1) and (2).[1] *See* Amended Notice of Removal, Dkt. 6.5, Ex. D (Am. Notice). The district court rejected Kalshi's "seemingly novel" arguments concerning federal officer removal, and held that "removal, undoubtedly, would disturb the federal-state balance provided by Congress." Remand Order, Dkt. 6.7,

---

[1] The district court's remand order would be unreviewable but for Kalshi's § 1442 federal officer removal claim. 28 U.S.C. § 1447(d) (remand orders are "not reviewable on appeal or otherwise" unless the case was "removed pursuant to section 1442").

Ex. F, at 3-4. The district court remanded the case back to state court effective in 14 days, *i.e.*, May 19, 2026. *Id.*

Kalshi appealed and moved the district court for a stay pending appeal, or in the alternative, a temporary stay while it seeks a stay pending appeal from this Court. Motion for Stay, Dkt. 6.8, Ex. G (Stay Motion). Kalshi noted its Stay Motion for the district court's consideration on June 5, 2026, nearly three weeks after the Remand Order is slated to go into effect. *Id.* Meanwhile, Kalshi filed the instant Emergency Motion, seeking immediate relief from this Court.

## III. ARGUMENT

This Court already denied Kalshi's stay request in *State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX, LLC*, No. 26-1304, Dkt. 12 (9th Cir. Mar. 19, 2026) (denying Kalshi's emergency motion under Circuit Rule 27-3 for administrative stay pending appeal of district court's remand). It should do the same here, as Kalshi has not met any of the *Nken* factors to support a discretionary stay, including showing any harm from litigating this case in state court. And, as in *Nevada*, Washington's strong interest in enforcing its state laws and protecting the public from attendant harms pursuant to its police powers strongly weigh against any stay.

8

Kalshi's stay request in this case is a delay tactic, the type of "gamesmanship" this Court recently cautioned against in the context of a mandatory stay request.[2] *See California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768-69 (9th Cir. 2025), *cert. denied sub nom. Express Scripts, Inc. v. California,* 223 L. Ed. 2d 507 (Jan. 12, 2026). In *Express Scripts*, this Court opined that "adopting an automatic stay rule in the federal officer context might encourage gamesmanship by defendants that would frustrate principles of judicial economy," because defendants "seeking to delay discovery could craft an argument for federal officer removal then appeal a district court's remand order." *Id.* at 771-72. This result would "cause plaintiffs languishing under mandatory stays to suffer harms in the form of lost evidence, depleted funding, and diminished patience." *Id.* at 773.

## A.    Legal Standards

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427. Stays pending appeal are discretionary and are an "extraordinary remedy." *Express Scripts, Inc.*, 139 F.4th

---

[2] Kalshi moved the district court for a mandatory stay pursuant to Rule 62(a), and a discretionary stay in the alternative. Dkt. 6.8, Ex. G, at 2. Kalshi appears to have abandoned its mandatory stay arguments in the instant motion, which in any event should be denied.

at 768-69. When determining whether to grant a stay, courts must consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434. The first two factors—whether the appellant will likely succeed on the merits and will be irreparably harmed absent a stay—are the most critical. *Id.*; *see also State of Nevada*, 2026 WL 700039 (denying stay); *KalshiEx, LLC v. Hendrick*, No. 2:25-cv-575-APG-BNW, 2025 WL 3642346 (D. Nev. Dec. 16, 2025) (denying Kalshi a stay pending appeal from an order dissolving a preliminary injunction against Nevada's state enforcement against Kalshi). If an applicant satisfies the first two factors, the court then assesses the final two factors— whether a stay would injure other parties or the public interest—which "merge when the Government is the opposing party." *Nken*, 556 U.S. at 434-35.

## B.    Kalshi Is Unlikely to Succeed on the Merits

Kalshi has not shown why it is more likely to prevail on its removal arguments in this case than in *Nevada v. Kalshi*. Given this, the Court has no reason to enter essentially the same type of stay it previously declined to enter in *Nevada*.

Kalshi's federal question jurisdiction argument primarily rests on an inapposite decision applying a Georgia law that materially differs from

10

Washington's Gambling Act. Emergency Motion, Dkt. 6.1 at 23 (citing *Georgia Gambling Recovery,* 2026 WL 279375). Unlike *Georgia Gambling Recovery*, Washington's claims are capable of resolution without looking to federal law, and Kalshi cannot conjure federal jurisdiction from of its own denial of this reality.

Kalshi's federal officer removal arguments are even less credible. The district court correctly found that, even if a federal regulator were a Rule 19 necessary party to state law actions against its regulated entities (which it is not), failure to join the regulator, by itself, does not trigger removal authority under § 1442(a)(1). Remand Order, Dkt. 6.7, Ex. F, at 3. And Kalshi's status as a Designated Contract Market (DCM) for commodities futures trading activities is not a property right sufficient to invoke § 1442(a)(2), particularly when the state claims do not challenge Kalshi's DCM status, let alone the validity of any federal law. *Id.*

### 1. Kalshi's federal question jurisdiction argument is baseless

Washington's "well-pleaded complaint" offers "no obvious affirmative federal question." Remand Order, Dkt. 6.7, Ex. F, at 2. The complaint "only targets activities determined to be gambling under state law," and it is "well established that gambling regulation is within a state's police powers (and that states have significant social and other interests in regulating such activity)." *Id.* at 2-3 (citing *Murphy v. Natl. Collegiate Athletic Assn.*, 584 U.S. 453, 484 (2018); *Ah Sin v. Wittman*, 198 U.S. 500, 505-06 (1905)).

11

Kalshi's *Grable* factors argument fails for multiple reasons. First, Kalshi correctly notes that the definition of "gambling" under Washington state law excludes "bona fide business transactions" involving "contracts for the purchase or sale at a future date of . . . commodities." Emergency Motion, Dkt. 6.1 at 24 (citing Wash. Rev. Code § 9.46.0237). But Kalshi then claims, in conclusory fashion, that this definition is impossible to apply without reference to federal law. *Id.* Kalshi's sole basis is an inapposite citation to *Georgia Gambling Recovery*, where the relevant Georgia state law requires plaintiffs to show that "gambling contracts" are "void" and, under Georgia law, "whether a gambling contract is void . . . depends on whether the contract is unlawful under the law governing its validity." 2026 WL 279375, at *3. Here, however, Washington need only show that Kalshi's activities constitute illegal gambling, which raises only issues of Washington state law. The district court in *State of Nevada v. KalshiEX* distinguished *Georgia Gambling Recovery* on precisely these grounds. 2026 WL 579364, at *3 ("Here, the Nevada statutes at issue require no interpretation of federal law as the claims are that Kalshi's market offers sport and events-based contracts that are wagers subject to Nevada's gaming laws."). Moreover, the plaintiff in *Georgia Gambling Recovery* also alleged that Kalshi's activities violate the Interstate Wire Act of 1961, 18 U.S.C. § 1084, thus raising an issue of federal law. 2026 WL 279375, at *3 n.3.

12

Second, Kalshi's reliance on an exception to the Washington Gambling Act's definition of "gambling" constitutes an affirmative defense, which does not give rise to federal question jurisdiction. *See Ohio Gambling Recovery, LLC, v. Kalshi Inc.*, No. 4:25-cv-1573, 2026 WL 865788, at *4 (N.D. Ohio Mar. 30, 2026); *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107, at *4 (E.D. Ky. Mar. 4, 2026); *see also Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 822, n.10 (9th Cir. 1985) (noting that "the state court to which we remand this case is fully capable to decide issues of preemption").

Third, under a longstanding "cornerstone" of preemption jurisprudence, "particularly in those [cases] in which Congress has legislated in a field which the States have traditionally occupied," the U.S. Supreme Court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act . . . ." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal punctuation omitted); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012). Under these circumstances, removal would "undoubtedly . . . disturb the federal-state balance provided by Congress." Remand Order, Dkt. 6.7, Ex. F, at 3.

### 2. Kalshi is not a "federal officer" under § 1442(a)

Kalshi's removal pursuant to 28 U.S.C. § 1442 was improper because "[n]othing in this case suggests [Washington] is directly attempting to interfere with [Kalshi]'s CFTC dealings." Remand Order, Dkt. 6.7, Ex. F, at 3. Complete relief in

13

this case can be accorded without the presence of the CFTC, as Washington makes no allegations and seeks no remedy against it. *See generally* Complaint, Dkt. 6.2, Ex. A. In any event, failing to join a federal entity as a party in state court—by itself, without more—does not warrant removal under § 1442(a)(1), and Kalshi cites no applicable authority to the contrary. *See generally* Emergency Motion; *e.g.*, *State of Nevada*, 2026 WL 579364, at *5. Even if Kalshi disagreed, its appropriate remedy would be to file a motion to compel joinder of the CFTC in *state court*, not to claim a right to removal for itself.

Kalshi also provides no applicable authority to support its contention that DCM status is federally derived "property" within the meaning of § 1442(a)(2). Kalshi's reliance on *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992), is misplaced because there, the Court explicitly declined to find a property right based on a federal regulatory scheme, turning instead to California state law which does not apply here. And Kalshi's claim of a "license from the CFTC" is less compelling than a claim to a property right through a contract with a federal officer to perform services, which was rejected in *St. Bernard Port, Harbor & Terminal District v. Violet Dock Port, Inc.* 809 F. Supp. 2d 524 (E.D. La. 2011) (holding that "[u]se of the term 'title' implies that the statute applies only to real property and not a contractual 'property right'"); *see also Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007) ("A highly regulated

14

firm cannot find a statutory basis for removal in the fact of federal regulation alone.").

As the district court correctly found, "[i]n every instance where courts have applied § 1442(a)(2), they did so in instances where real—not intangible—property was at issue." Remand Order, Dkt. 6.7, Ex. F, at 3 (citing, *e.g.*, *St. Bernard Port*, 809 F. Supp. 2d at 535; *Town of Davis v. W. Virginia Power and Transmission Co., Inc.*, 647 F. Supp. 2d 622, 624 (N.D. W.Va. 2007); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 28-31 (D.P.R. 2002)). Kalshi provides "no compelling reason to adopt its seemingly novel argument." Remand Order, Dkt. 6.7, Ex. F, at 3. This is so, particularly against the backdrop of the U.S. Supreme Court's warning that permitting defendants to remove cases simply because they are federally regulated "would expand the scope of the [federal officer removal] statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion." *Watson*, 551 U.S. at 153 (internal citation omitted).

In its Emergency Motion, Kalshi tellingly claims that "the *core question* in this case is the proper interpretation of a federal statutory scheme—the CEA—which is appropriately resolved by a federal court." Emergency Motion, Dkt. 6.1 at 26 (emphasis added). But it is well settled that "a defense that relies on . . . the pre-

emptive effect of a federal statute[] will not provide a basis for removal." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, if—as Kalshi claims—the "core question" presented in this appeal is whether federal law preempts Washington state gambling laws, then Kalshi's appeal will undoubtedly fail on the merits.

## C.     Kalshi Will Not Be Irreparably Harmed Absent a Stay

Kalshi will not suffer irreparable harm absent a stay pending appeal. Kalshi claims that the "state court proceedings undermine Kalshi's appellate rights," and that denial of a stay "would invite Washington to take the position that it is not bound by any decision this Court renders." Emergency Motion, Dkt. 6.1 at 33. These contentions are speculative and baseless, and this Court correctly rejected them when it denied Kalshi's analogous stay motion in *Nevada v. Kalshi*. In that case, remand was granted, a state court enjoined Kalshi's operations in Nevada, and none of these events has stopped the Ninth Circuit from considering Kalshi's appeal. The "jurisdictional morass" that Kalshi decries has not materialized; on the contrary, Kalshi is the one attempting to manufacture jurisdictional discord by hauling Washington into federal court to adjudicate its state law claims.

"[L]itigating in state court is not a harm, let alone an irreparable harm." *State of Nevada*, 2026 WL 700039, at \*3. Indeed, "if a defendant were entitled to a stay merely because it would have to litigate in state court and appeal the remand order in the court of appeal at the same time, a defendant challenging remand under the

16

federal officer removal statute would automatically be entitled to stay pending appeal." *Id.* This is precisely the outcome the Ninth Circuit rejected in *Express Scripts*. *See* 139 F.4th at 763 (rejecting automatic stay pending appeals of district court orders remanding cases removed under federal officer removal statute).

**D. A Stay Would Substantially Injure Washington and the Public Interest**

Contrary to Kalshi's assertions, Washington and the public interest will suffer enormous harm if a stay pending appeal is granted. Washington faces imminent and irreparable harm each day Kalshi continues operating in this state. *See State of Nevada*, 2026 WL 700039 at *3 (finding final *Nken* factors weighed against stay and that Kalshi's continued operations imposed "substantial irreparable harms" on the state and public interest) (quoting *Kalshiex, LLC v. Hendrick, et al.*, No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282 at *13-14 (D. Nev. Nov. 24, 2025)); *State of Nevada ex rel. Nevada Gaming Control Board, v. Blockratize Inc.*, No. 3:26-cv-00089, 2026 WL 700082 (D. Nev. Mar. 12, 2026) (same). Washington made a deliberate policy choice to prohibit gambling except where it is specifically authorized and tightly regulated. *See* discussion in Section II.A., *supra*. Kalshi's gambling activities are an ongoing intrusion on Washington's sovereign authority to decide where, how, and under what protections gambling may occur within its borders. *See, e.g., Ah Sin*, 198 U.S. at 505–06. Unlawful and inadequately controlled gambling causes real damage to Washington residents and their families—financial,

emotional, and psychological.[3] Every day Kalshi violates Washington's law means more unlawful wagers and more harm that cannot be unwound after the fact. *See, e.g.*, *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at \*13-14 (D. Nev. Nov. 24, 2025); *State of Nevada*, 2026 WL 700039 at \*3. The public interest in the prompt and orderly progress of Washington's enforcement action heavily weighs against a stay.

## IV.    CONCLUSION

For all the foregoing reasons, Washington respectfully requests that this Court deny Kalshi's Emergency Motion.

---

[3] Hing, N., et al., *An integrative review of research on gambling and domestic and family violence: Fresh perspectives to guide future research*, 13 Frontiers Psych. (Oct. 2022) [https://doi.org/10.3389/fpsyg.2022.987379]; Potenza, M., et al., *Gambling Disorder*, Nature Reviews Disease Primers, Vol. 5, No. 51 (2019) [https://www.nature.com/articles/s41572-019-0099-7] (substance use disorders, impulse-control disorders, mood disorders, and anxiety disorders particularly common among people with gambling problems).

RESPECTFULLY SUBMITTED this 18th day of May, 2026.


NICHOLAS W. BROWN
Attorney General


*s/ Matthew Geyman*
MATTHEW GEYMAN, WSBA #17544
JULIA K. DOYLE, WSBA #43993
SEANN COLGAN, WSBA #38769
BEN BRYSACZ, WSBA #54683*
TERRENCE MANGAN, WSBA #65269*
Assistant Attorneys General
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
matt.geyman@atg.wa.gov
julie.doyle@atg.wa.gov
seann.colgan@atg.wa.gov
ben.brysacz@atg.wa.gov
tk.mangan@atg.wa.gov

*Attorneys for the State of Washington*

*\* Admission application pending*

19

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

Date: May 18, 2026

*s/ Matthew Geyman*
Matthew Geyman

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 26-3106

I am the attorney or self-represented party.

**This brief contains** | 5,007 | **words, including** | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⚪ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⚪ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⚪ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⚪ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

⚪ complies with the length limit designated by court order dated _____.

⚪ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Matthew Geyman | **Date** | May 18, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*